By the Court.—Neilson, J.*
The plaintiff, having purchased, as she alleges, with her own means, premises on Classon-avenue, had a saloon, professedly carried on for her own benefit. She claims that her husband acted for her in the business. A small sign, with his name on it, was up in the saloon.
The plaintiff had previously had a saloon at the corner of Adams-street, and, for a portion of the time, a partnership with one Henry, the plaintiff’s husband acting in that business with the same sign up there. The plaintiff did not personally take part in conducting the business. She says that that saloon was sold out, but that none of the proceeds of that sale went into the saloon on Classon-avenue.
While the Adams-street business was being carried *444 on, the plaintiff’s husband engaged Fritz Fredeke to repair the billiard tables—gave a note for the amount of the bill, and on that note judgment was obtained against him. Execution having been issued on that j udgment, property in the Classon-avenue saloon was seized by the sheriff, and this action was brought to recover that property or its value.
The plaintiff testified that the property belonged, to her.
On the trial, the first question was whether the property did really, and in her own exclusive right, belong to the plaintiff; and, in that case, then, secondly, whether the business, which she also claims belonged to her, had been so carried on as to lead persons dealing with the concern, or with her husband, to believe that he was the proprietor, so that it would be inequitable to allow her to assert her title as against the creditor.
The plaintiff owned the dwelling where the Classonavenue saloon was, and resided there. She did not own the Adams-street building, or reside there, and the lease was arranged for, and signed by, her husband.
It does not appear how far he acted in acquiring the property on Classon-avenue, but he did buy out Trabant, by whom the Adams-street saloon had been previously carried on.
The connecting links between the two places are the sign with the husband’s name on, used at both saloons, and the continued and active business management of the husband throughout. The business commenced at the first place was continued at the other. It would seem that neither the landlord of the premises in Adams-street, nor Trabant, Fredeke, or the sheriff, had any reason to apprehend that the plaintiff was the proprietor of that business.
It was admitted on the trial that the license to carry on the business in Classon-avenue was in the name of the husband, a married woman not being competent to *445 obtain such license—a strong circumstance tending to show that the husband was the proprietor.
The separate property of the married woman, and her earnings from her trade, business or labor, are secured to her by our recent statutes; are put beyond the reach of her husband and of his creditors.
The real intent was to give relief to a woman who, while competent to carry on business, and to earn a livelihood, was unfortunate in her marital relations; had a husband idle, intemperate, or improvident.
Under the prior law, however industrious she might have been, her earnings belonged to the husband; and it seemed not only just but consistent with sound policy, that the wife should be encouraged in her efforts to earn something for herself and for her children, and, to that end, be relieved from the disabilities which had repressed and thwarted her efforts. It was the general view of the profession, when those statutes were adopted, that the intent was to secure to a married woman a separate business (the fruit of her skill or labor), as distinguished from that of her husband; that her business would necessarily be separate and apart from that of her husband; not that he would serve and she have the entire benefit. The creditors of the husband have no lien upon his labor or earnings, but they have strong claims to be considered where a fraudulent combination exists between him and Ms wife.
But, in giving a liberal construction to those statutes, our courts have held, that, in the management of her separate property or business, she may avail herself of the aid of her husband, that she may act by him as her agent (27 N. Y., 277; 33 Id., 518; 35 Id., 294; 35 Id., 600).
That construction is to be accepted. But. in each instance where the business is carried on ostensibly by the husband, secretly by the wife through him, and where they, or either of them, come in conflict with a *446 creditor, special attention must Tbe given to all the circumstances. It must be considered whethér the relation of the wife to the business is not merely formal; his relation to it actual and with an interest. The intent necessarily enters into the question, and if the transaction be merely colorable—a device to defraud creditors —it finds no countenance in the statute. It is, moreover, highly impolitic to allow the husband and wife to be so engaged in business that they may be able to elect which of them shall come forward as proprietor, according to the promptings of interest in an emergency.
It would seem, also, that the intent was to allow the married woman to engage in business which she could legally carry on, and if she cannot obtain a license to keep a liquor saloon, she is thus far under a disability, operating as a restraint. If, notwithstanding that, she has her husband take out that license for a business to be carried on by him, and necessarily in his name, he, alone, being subject to the excise law, and to the municipal regulations in respect to such places of resort, her claim as proprietor, in a contest with his creditors, is seriously impaired. But, in the very nature of the case, it is difficult, often impossible, for a creditor to impeach the motives of the parties, or to establish a fraudulent intent. That can only be done by such light as the circumstances may reflect from the general course of the business. In this instance the husband had no wages or salary, only his victuals and clothing ; and it seems hard to believe that the legislature intended that the husband might thus be the unpaid servitor of the wife, while his creditor is put at defiance.
The plaintiff testified that she owned the property ; but so also did she testify that the business," at both saloons, was carried on for and belonged to her ;—that in A dams-street, where the husband rented the premise*! in his own name, giving references, and bought *447 out the previous occupant;—and that in Classonavenue, where the right to transact business was under a license to the husband. Her testimony was to be considered by the jury with reference to all the circumstances.
It was said by Denio, Ch. J. (27 N. Y., 280), that “ if the husband be indebted, there is more or less reason to suspect that such arrangements are adopted as a £ cover,’ ” and “whether, in a given case, the transaction is sincere and bona fide, or a colorable device to cheat the creditors of the husband, is a question of fact to be determined by the jury.”
In this case there was enough to justify the learned judge in submitting the case to the jury.
Several exceptions were taken on the trial, to which a brief reference may suffice.
Fredeke having stated that he had performed work for Thomas O’Leary at the saloon, that his name was up—was asked : 6 £ What did Thomas point out to you % What did he want done V’ And to each of the inquiries objection was made, and exception taken to the ruling of the judge. If the actiou had been against Mrs. O’Leary to charge her with the payment for that work, those inquiries would have been proper. If a married woman confides the management of her business to her husband, he may give' directions to others in that business. That is but an incident. A part of the business being the use of billiard tables, and repairs being necessary, it. would have been within his province to procure repairs to be made. He had implied power to give directions. ■ Equally were those inquiries proper in this case; they had reference to the character of the business, to his relation and management. The plaintiff says that he managed the business. In that management he could order those repairs, give directions, as he might have done as to a ton of coal needed for use. If, in an action to charge the *448 plaintiff as the principal, the effort had been to put in his declarations to the effect that he was her agent, or if, in this case, the effort had been to show that he said he was the owner of the property, a different principle would have been applicable. But, with some such obvious limitations, it is evident that the husband’s course of action in the management of the saloon, and in the business connected with it, was open to investigation.
The exceptions taken to other inquiries which followed were equally untenable.
The questions objected to were as to the doing of the work, and the non-payment. The witness had previously, and without objection, stated that he did the work, and the additional questions referred to matters related to the principal fact,-the performance of the work'.
In cases where fraud is alleged, where the secret arrangements of the husband and wife are involved, and his agency questioned, a much more liberal course of inquiry thau the counsel taking these objections seems to have considered proper, has generally been allowed. The plaintiff’s theory is, that her husband was at the saloon, acting for her, and as her agent. It was competent to contradict that by circumstances, the course of action and dealings; to show that he was acting for himself.
The objections to the testimony as to the part Thomas O’Leary took in the renting of the Adams-street saloon, and the other matters connected therewith, were not well taken. The circumstances tending to illustrate the course of business, the manner in which it was carried on, and his office in it, were proper for the consideration of the jury. With the same view, the lease signed by the husband was properly received in evidence.
Henry, named by the plaintiff as partner for a *449 short time in the business, was asked who had charge of the business, and whether the plaintiff had anything to do with the saloon. The objections taken were not to the form of the questions. It is difficult to conceive how a creditor could ever contest the claim of the debtor’s wife, if such inquiries were not allowed. It was one mode of impeaching the plaintiff’s claims. As she had sent him out to act, it will not do to say she was not present, and that nothing which occurs in her absence can be given in evidence. It is to be observed that the objections were hot stated to be on the ground that, as the proceeds of the Adams-street saloon did not go into the purchase of that on Classon-avenue, or, cas there was a distinction in respect to the place and time of keeping the two saloons, nothing occurring at the first place could prejudice the plaintiff in respect to the other place. We need not consider what might have been the ruling of the learned judge if such specific objection had been made.
The request that a verdict should be directed for the plaintiff was properly refused; there was matter for the jury.
It does not become necessary to consider the instructions given to the jury, as only an exception in the most general form was taken:
The judgment should be affirmed, with costs.
Judgment affirmed, with costs.

 Present, McCue and Neilson, JJ.